**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ROBIN ABERNETHY, an individual, | |
| Plaintiff, | |
| v. | **Case No.:** |
| | **COMPLAINT** |
| EASTPOINT RECOVERY GROUP INC, a New York Corporation; ATLANTIC RECOVERY SOLUTIONS LLC, a New York Limited Liability Company; DNF ASSOCIATES LLC, a Delaware Limited Liability Company; and DIVERSE FUNDING ASSOCIATES LLC, a Delaware Limited Liability Company, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**COMPLAINT**

COMES NOW Robin Abernethy, Plaintiff, and states the following Complaint against Defendant EASTPOINT RECOVERY GROUP INC, Defendant ATLANTIC RECOVERY SOLUTIONS LLC, Defendant DNF ASSOCIATES LLC, and Defendant DIVERSE FUNDING ASSOCIATES LLC, for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*

1

JURISDICTION AND VENUE

1.

This action arises out of Defendants' illegal and improper efforts to collect a consumer debt, and includes violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (the "FDCPA") and Georgia's Fair Business Practices Act, O.C.G.A. §§ 10-1-390 *et seq.* ("FBPA"), and Plaintiff's claims under these statutes are so related that they form the same case or controversy.

2.

Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331 & 1337, as well as 28 U.S.C. § 1367 (Supplemental Jurisdiction).

3.

This Court has personal jurisdiction over the Defendants for the purposes of this action because Defendants transact business in the State of Georgia, the committed acts that form the basis for this suit occurred within the State of Georgia, and both Defendant DNF ASSOCIATES LLC and Defendant ATLANTIC RECOVERY SOLUTIONS LLC have registered agents in the state of Georgia.

4.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because the acts underlying this action occurred within the Northern District of Georgia, Plaintiff is a resident of the Northern District of Georgia, and both Defendant DNF ASSOCIATES LLC and Defendant ATLANTIC RECOVERY SOLUTIONS LLC have registered agents in the Northern District of Georgia.

PARTIES

5.

Robin Abernethy is an individual who is a resident of Gwinnett County, Georgia.

6.

EASTPOINT RECOVERY GROUP INC ("EASTPOINT") is a corporation incorporated under the laws of the State of New York that regularly transacts business within the State of Georgia, including the targeting of residents of the State of Georgia for the collection of debts.

7.

ATLANTIC RECOVERY SOLUTIONS LLC ("ARS") is a Limited Liability Company organized under the laws of the State of New York that regularly transacts business within the State of Georgia, including the

targeting of residents of the State of Georgia for the collection of debts, and has a registered agent in the State of Georgia named REGISTERED AGENTS INC and located at 300 COLONIAL CENTER PARKWAY, SUITE 100N, ROSWELL, GA, 30076, USA

8.

DIVERSE FUNDING ASSOCIATES LLC ("DIVERSE FUNDING") is a Limited Liability Company organized under the laws of the State of Delaware that regularly transacts business within the State of Georgia and regularly targets Georgia residents for the collection of debts.

9.

DNF ASSOCIATES LLC ("DNF ASSOCIATES") is a Limited Liability Company organized under the laws of the State of Delaware that regularly transacts business within the State of Georgia, regularly targets Georgia residents for the collection of debts, and has a registered agent in Georgia named COGENCY GLOBAL INC and located at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA, 30076.


## FACTUAL ALLEGATIONS

10.

Plaintiff Robin Abernethy is an individual who is a natural person.

11.

Defendant Eastpoint Recovery Group Inc is "a professional receivables and collections management firm"[1] who claim to be "[p]roven industry leaders" with "highly trained staff" that "strive to provide clients with the best asset recovery options that maximize results."[2]

12.

Defendant Eastpoint Recovery Group Inc regularly collects or attempts to collect debts owed or due to others.

13.

The principal purpose of Defendant Eastpoint Recovery Group Inc's business is the collection of any debts.

14.

Defendant Atlantic Recovery Solutions LLC "is a nationally licensed, insured, bonded debt recovery agency" who's "services focus on recovering debts that are past due."[3]

---

[1] About Us, Eastpoint Recovery Group Inc, available at (https://eastpointrecoverygroup.com/about/) (last visited December 29, 2020).
[2] Eastpoint Recovery Group Inc, available at (https://eastpointrecoverygroup.com) (last visited December 29, 2020).
[3] Atlantic Recovery Solutions, available at (https://www.atlanticrecoverysolutions.com) (last accessed December 29, 2020).

15.

Defendant Atlantic Recovery Solutions LLC regularly collects or attempts to collect debts owed or due to others.

16.

The principal purpose of Defendant Atlantic Recovery Solutions LLC's business is the collection of any debts.

17.

Defendant Diverse Funding Associates LLC and Defendant DNF Associates LLC "are a company with more than 75 years of combined experience in the realm of debt purchasing and collections" according to their shared website.[4]

18.

Defendant DNF Associates LLC lists its NAICS Sub Code on the Georgia Secretary of State's website as "Collection Agencies."

19.

In 2020 alone, Defendant DNF Associates LLC filed no less than seven (7) garnishment or collection actions in Gwinnett County, Georgia,

---

[4] Diverse Funding Associates, available at
(https://www.diversefundingllc.com) (last accessed December 29, 2020).

against consumers as part of its efforts to collect consumer debts;[5] no less than four (4) collection lawsuits against consumers in DeKalb County, Georgia, as part of its efforts to collect consumer debts;[6] and no less than eight (8) garnishment or collection actions in Fulton County, Georgia, against consumers as part of its efforts to collect consumer debts.[7]

20.

Upon information and belief, Defendant DNF Associates LLC regularly collects or attempts to collect debts owed or due to others.

21.

The principal purpose of Defendant DNF Associates LLC's business is the collection of any debts.

22.

Upon information and belief, Defendant Diverse Funding Associates LLC acts as the servicer for Defendant DNF Associates LLC.

23.

Upon information and belief, Defendant Diverse Funding Associates LLC and its officers, directors, or employees operate or otherwise direct or

---

[5] Gwinnett County's court records may be searched online at: (https://odyssey.gwinnettcourts.com/Portal/).
[6] DeKalb County's court records may be searched online at: (https://ody.dekalbcountyga.gov/portal).
[7] Fulton County's court records may be searched online at: (https://publicrecordsaccess.fultoncountyga.gov/Portal/).

control the efforts to attempt to collect consumer debts owed or alleged to be owed to Defendant DNF Associates LLC.

24.

Upon information and belief, Defendant Diverse Funding Associates LLC regularly collects or attempts to collect debts owed or due to others.

25.

The principal purpose of Defendant Diverse Funding Associates LLC's business is the collection of any debts.

*Efforts To Collect A Consumer Debt From Ms. Abernethy*

26.

Each of the Defendants in this case have sought to collect, either directly or indirectly through agents, an debt they allege Ms. Abernethy owes to PayPal.

27.

Documents provided by Defendants alleged the debt is for a personal line of credit incurred by Ms. Abernethy for personal, family, or household purposes (the "Alleged Debt").

28.

In either February or March of 2020, Defendant EASTPOINT called Ms. Abernethy's boyfriend on his cell phone in an attempt to collect the Alleged Debt.

29.

Ms. Abernethy did not give her consent to Defendant EASTPOINT, to any original creditor, or to any of the three remaining Defendants in this case to contact her boyfriend regarding the Alleged Debt.

30.

Nevertheless, Defendant EASTPOINT disclosed to Ms. Abernethy's boyfriend that they were a debt collector and asked him to tell Ms. Abernethy to call Defendant EASTPOINT about the Alleged Debt.

31.

Defendant EASTPOINT implied to Ms. Abernethy's boyfriend that they were a law firm and a lawsuit would be filed against Ms. Abernethy to collect the Alleged Debt if she did not contact them.

32.

The employee or agent for Defendant EASTPOINT did not state that he or she was trying to confirm or correct location information concerning

Ms. Abernethy, but instead stated that Ms. Abernethy owed the Alleged Debt and that the caller was a debt collector.

33.

In March 2020, Ms. Abernethy received a call from Defendant EASTPOINT that attempted to collect the Alleged Debt.

34.

Prior to March 2020, Ms. Abernethy had received no communications from Defendant EASTPOINT or any of the Defendants in this case in writing.

35.

The March 2020 phone call from Defendant EASPOINT was Ms. Abernethy's initial communication with Defendant EASTPOINT.

36.

Defendant EASPOINT, during the March 2020 phone call, implied that it was a law firm and that they would file a lawsuit against Ms. Abernethy in Guilford County, North Carolina, to collect the Alleged Debt unless she settled with them.

37.

Ms. Abernethy did not live in Guilford County, North Carolina, at the time of the phone call.

38.

Ms. Abernethy did not open the alleged account for the Alleged Debt in Guilford County, North Carolina.

39.

Defendant EASTPOINT knew, or should have known, that Guilford County, North Carolina, was not the proper place for any lawsuit against Ms. Abernethy to try and collect the Alleged Debt.

40.

Defendant EASTPOINT is not a law firm and had no legal right or authority to bring a lawsuit against Ms. Abernethy in Guilford County, North Carolina.

41.

Defendant EASTPOINT threatened to take actions against Ms. Abernethy that could not legally be taken by Defendant EASTPOINT, and that Defendant EASTPOINT never intended to take, when it threatened to sue Ms. Abernethy in Guilford County, North Carolina.

42.

Defendant EASTPOINT sent an email to Ms. Abernethy including a letter demanding payment on the Alleged Debt (the "EASTPOINT Collection Letter").

43.

The EASTPOINT Collection Letter to Ms. Abernethy identified the original creditor for the Alleged Debt as PayPal.

44.

Ms. Abernethy does not owe any loans to PayPal, and PayPal has not originated any lines of credit to Ms. Abernethy.

45.

The EASTPOINT Collection Letter identified Diverse Funding Associates as the "Current Creditor."

46.

The EASPOINT Collection Letter contained false information about who the original creditor for the Alleged Debt was, and potentially who the current creditor for the Alleged Debt was.

47.

The EASTPOINT Collection Letter sought to collect an incorrect amount from Ms. Abernethy for the Alleged Debt.

48.

The EASTPOINT Collection Letter did not include the disclosure language required by the FDCPA, 15 U.S.C. § 1692g.

49.

Ms. Abernethy never received anything in writing from Defendant EASTPOINT containing the disclosure language required to be provided to her pursuant to the FDCPA, 15 U.S.C. § 1692g.

50.

Ms. Abernethy did not know her right to dispute the Alleged Debt or request in writing the verification and validation of the Alleged Debt from Defendant EASTPOINT.

51.

Ms. Abernethy did not know that if she disputed the Alleged Debt in writing, and requested verification and validation of the Alleged Debt, that Defendant EASTPOINT would have to cease attempting to collect the Alleged Debt until they provided verification and validation.

52.

Ms. Abernethy spent her own time researching how to best respond to Defendant EASTPOINT's collection efforts—time that took her away from work, her family, her friends, and her hobbies during the initial phases of the COVID-19 Pandemic.

53.

After spending her own time researching how to respond to Defendant EASTPOINT, Ms. Abernethy sent a demand for verification and validation to Defendant EASTPOINT.

54.

Even with her research, Ms. Abernethy did not know that by sending this written demand for verification and validation that Defendant EASTPOINT had to cease its collection efforts until it responded.

55.

Ms. Abernethy never received a response to her letter disputing the debt and demanding verification and validation from Defendant EASTPOINT.

56.

Upon information and belief, Defendant EASTPOINT continued to try and collect the Alleged Debt either directly or indirectly.

57.

Upon information and belief, Defendant DIVERSE FUNDING hired Defendant EASTPOINT to attempt to collect the Alleged Debt from Ms. Abernethy on its behalf.

58.

Upon information and belief, Defendant DIVERSE FUNDING directed Defendant EASTPOINT to threaten litigation in Guilford County, North Carolina, despite knowing Ms. Abernethy did not reside in Guilford County, North Carolina, or open the alleged account in Guilford County, North Carolina.

59.

The actions of Defendant EASTPOINT and Defendant DIVERSE FUNDING in attempting to collect the Alleged Debt—including threats to file legal actions in the wrong state and venue, contacting third parties, and refusing to provide the legal notices required by the FDCPA—caused Ms. Aberenthy to suffer stress, anxiety, fear, and frustration—commonly referred to as emotional distress—that she would not have suffered but for Defendant EASTPOINT and Defendant DIVERSE FUNDING's actions.

60.

In August of 2020 Defendant ARS began to contact Ms. Abernethy in an attempt to collect the Alleged Debt from her.

61.

Ms. Abernethy's initial communication with Defendant ARS was on August 3rd, 2020, by phone.

62.

In phone communications, Defendant ARS claimed to have "acquired" the Alleged Debt from Defendant EASTPOINT.

63.

Neither Defendant ARS nor Defendant EASTPOINT were assigned the Alleged Debt, and at no time did either Defendant possess an ownership interest in the Alleged Debt.

64.

Defendant ARS did not "acquire" the Alleged Debt from Defendant EASTPOINT because Defendant EASPOINT had no right to sell or assign the Alleged Debt to Defendant ARS.

65.

Nevertheless, Defendant ARS implied to Ms. Abernethy that they owned the Alleged Debt.

66.

Defendant ARS did not send Ms. Abernethy any written communications containing the disclosure language required by 15 U.S.C. § 1692g within five (5) days of the August 3rd, 2020, initial communication.

67.

Defendant ARS never sent Ms. Abernethy any written communications containing the disclosure language required by 15 U.S.C. § 1692g.

68.

In fact, when Ms. Abernethy asked about why she had not received any written communication from Defendant ARS, including how to dispute the Alleged Debt, Ms. Abernethy was explicitly told by Defendant ARS that they were not required to send her this language because it was already sent by another debt collector—presumably Defendant EASTPOINT.

69.

Ms. Abernethy did not know she had a right to dispute the Alleged Debt with Defendant ARS or request verification and validation of the Alleged Debt because of Defendant ARS's false, misleading, and deceptive statements.

70.

Ms. Abernethy, if she had known about her right to dispute the Alleged Debt and seek verification and validation of it, would have done so in order to obtain more information about how much was allegedly owed, to

who it was originally owed, and to who Defendant ARS claimed it was owed to now.

71.

Ms. Abernethy, by disputing the Alleged Debt in writing and seeking verification and validation, would have also prevented Defendant ARS from harassing her or her family in its attempts to collect the Alleged Debt at least until the verification and validation was provided.

72.

Ms. Abernethy was denied her rights because of the active and intentional deception and misleading actions of Defendant ARS.

73.

Further, Defendant ARS's statement that someone else—Defendant EASTPOINT or otherwise—sent a written communication to Ms. Abernethy containing the 15 U.S.C. § 1692g disclosures was false, as Ms. Abernethy did not receive any such written document and no such written document was sent to any of her known addresses by the Defendants.

74.

Ms. Abernethy was intimidated by Defendant ARS's false, misleading, and deceptive statements regarding her legal rights and, as a

result, chose not to act on her rights out of a belief they no longer applied to her.

75.

Further, Defendant ARS confirmed that it knew Ms. Abernethy's physical mailing address, but yet never sent Ms. Abernethy a written communication containing the notices required by 15 U.S.C. § 1692g.

76.

Defendant ARS used information obtained from Ms. Abernethy's credit report to intimidate, harass, and abuse Ms. Abernethy.

77.

Defendant ARS used information on Ms. Abernethy's income, credit usage, and employment to insult and demean Ms. Abernethy in an effort to try and intimidate, oppress, or abuse Ms. Abernethy as part of its attempt to collect the Alleged Debt.

78.

Defendant ARS threatened to sue Ms. Abernethy—which it had no right to do as it was not a law firm, or the owner of the Alleged Debt—and garnish her wages.

79.

Defendant ARS threatened to contact Ms. Abernethy's employer about the Alleged Debt.

80.

Defendant ARS, through its communications, implied that it was a law firm, and that it would initiate a lawsuit against Ms. Abernethy.

81.

These communications include multiple voicemails left with Ms. Abernethy by Defendant ARS.

82.

After repeatedly calling Ms. Abernethy and not reaching her, Defendant ARS called Ms. Abernethy's mother as part of its attempt to collect the Alleged Debt.

83.

Ms. Abernethy did not give her consent to Defendant ARS, to any original creditor, or to any of the three remaining Defendants in this case to contact her mother regarding the Alleged Debt.

84.

Nevertheless, Defendant ARS disclosed to Ms. Abernethy's mother that they were a debt collector and that they were going to sue Ms. Abernethy to collect the Alleged Debt.

85.

Defendant ARS implied to Ms. Abernethy's mother that they were a law firm and a lawsuit would be filed against Ms. Abernethy to collect the Alleged Debt if she did not contact them.

86.

The employee or agent for Defendant ARS did not state that he or she was trying to confirm or correct location information concerning Ms. Abernethy, but instead stated that Ms. Abernethy owed the Alleged Debt and that the caller was a debt collector.

87.

Defendant ARS is not a law firm and had no legal right or authority to bring a lawsuit against Ms. Abernethy.

88.

Defendant ARS threatened to take actions against Ms. Abernethy that could not legally be taken by Defendant ARS, and that Defendant ARS never intended to take, when it threatened to sue Ms. Abernethy.

89.

Defendant ARS did send Ms. Abernethy a written communication in the mail demanding payment on the Alleged Debt (the "ARS Collection Letter").

90.

The ARS Collection Letter claimed the Alleged Debt was originally owed to "Pay Pal."

91.

Ms. Abernethy does not owe any loans to PayPal, and PayPal has not originated any lines of credit to Ms. Abernethy.

92.

The ARS Collection Letter claimed the "Current Credit" was Defendant DNF Associates LLC—not Defendant DIVERSE FUNDING.

93.

At this time, Defendant Abernethy did not know the connections between Defendant DIVERSE FUNDING and Defendant DNF ASSOCIATES.

94.

Ms. Abernethy was forced to hire legal counsel to investigate the claims of Defendant EASTPOINT, Defendant DIVERSE FUNDING,

Defendant ARS, and Defendant DNF ASSOCIATES regarding the Alleged Debt.

95.

As part of this investigation and representation, Ms. Abernethy incurred $33.00 in costs and no less than $2,310.00 in attorneys' fees she would not have incurred but for the actions of the Defendants.

96.

Ms. Abernethy, through her legal counsel, sent demands for verification and validation to Defendant ARS, Defendant DNF ASSOCIATES, and Defendant DIVERSE FUNDING, that also included notices of representation by legal counsel.

97.

Ms. Abernethy, through legal counsel, also sent a notice of representation by legal counsel to Defendant EASPOINT.

98.

The demand for verification and validation and notice of legal representation sent to Defendant ARS was sent by fax and by email, as well as USPS Priority Mail, on August 11, 2020.

99.

Defendant ARS received Ms. Abernethy's notice of representation by legal counsel and demand for verification and validation on August 11, 2020.

100.

Nevertheless, Defendant ARS texted Ms. Abernethy on her cell phone number on August 12, 2020, despite knowing Ms. Abernethy was represented by legal counsel, despite knowing Ms. Abernethy had demanded verification and validation, and despite Ms. Abernethy never consenting to Defendant ARS communicating with her by text message.

101.

The text message from Defendant ARS sought to collect the Alleged Debt and stated that there was a "pending case" against Ms. Abernethy, once again implying that Defendant ARS was a law firm or otherwise an entity authorized to pursue legal action against Ms. Abernethy to collect the Alleged Debt.

102.

Ms. Abernethy was angry, frustrated, fearful, stressed, and upset over Defendant ARS's continued communications with her attempting to collect

the Alleged Debt despite her having hired legal counsel to represent her and act as a buffer between her and the Defendants.

103.

Ms. Abernethy suffered emotional distress that she would have not suffered but for Defendant ARS's direct communication with her despite her representation by legal counsel.

104.

Defendant ARS's direct communication with Ms. Abernethy also rendered moot the costs and legal fees she incurred to hire legal counsel to represent her, and notify Defendants of that representation.

105.

Upon information and belief, Defendant DNF ASSOCIATES directed Defendant ARS to not send the notices required by 15 U.S.C. § 1692g based on the claim they were already sent, despite knowing that no such notices had been received by Ms. Abernethy or sent to her last-known address.

106.

Upon information and belief, Defendant DNF ASSOCIATES directs, oversees, or otherwise has reviewed and approved the collection methods of Defendant ARS—including any and all call scripts used by Defendant

ARS's employees in their collection efforts with consumers, including Ms. Abernethy.

107.

Defendant ARS's aggressive, harassing, intimidating, misleading, and deceptive efforts to collect the Alleged Debt through repeated, harassing phone calls, voicemails, and text messages caused Ms. Abernethy to suffer fear, stress, anxiety, frustration, and anger such that she suffered emotional distress she would not have suffered but for Defendant ARS and Defendant DNF ASSOCIATE's actions.

108.

Defendant DNF ASSOCIATES responded to Ms. Abernethy's request for verification and validation by providing a letter and some account statements (the "DNF Validation Letter").

109.

The DNF Validation Letter claimed the originator of the Alleged Debt was PayPal.

110.

Ms. Abernethy does not owe any loans to PayPal, and this caused Ms. Abernethy confusion.

111.

The DNF Validation Letter did not identify the current creditor to which the Alleged Debt was owed.

112.

The DNF Validation Letter stated a "Current Balance" and that it was "an attempt to collect a debt by a debt collector."

113.

The DNF Validation Letter did not include any documents showing the assignment of the Alleged Debt to DNF Associates LLC by either Defendant DIVERSE FUNDING, PayPal, or any original creditor.

114.

The DNF Validation Letter included statements addressed to Ms. Abernethy at her Buford, Georgia, address for an account allegedly opened with Synchrony Bank—not with PayPal.

115.

The DNF Validation Letter shows that Defendants knew, or should have known, that Ms. Abernethy did not reside in, or open an account in, Guilford County, North Carolina.

116.

Upon information and belief, Defendant DIVERSE FUNDING and Defendant DNF ASSOCIATES actively seek methods and practices designed to reduce or limit the likelihood of consumers such as Ms. Abernethy receiving notices of their rights under the FDCPA or other consumer laws, including notices required to be sent by 15 U.S.C. § 1692g.

117.

This includes providing debt collectors they hire to collect debts on their behalf—such as Defendant ARS and Defendant EASTPOINT—with addresses that Defendant DNF ASSOCIATES and Defendant DIVERSE FUNDING know, or should know, are incorrect, out of date, or otherwise not the proper mailing address for consumers such as Ms. Abernethy.

118.

In this case, upon information and belief, Defendant DIVERSE FUNDING and Defendant DNF ASSOCIATES knew Ms. Abernethy did not reside in Guilford County, North Carolina, and that the Alleged Debt was not opened and incurred in Guilford County, North Carolina, but nevertheless used an address in Guilford County, North Carolina, so that Ms. Abernethy would not receive the notices required by federal law and to

intimidate and harass Ms. Abernethy into believing she would face a lawsuit in a different state from where she did live.

119.

Upon further information and belief, Defendant DNF ASSOCIATES and Defendant DIVERSE FUNDING actively engage debt collectors who pursue the tactics engaged by Defendant EASPOINT and Defendant ARS in this case—deceptively implying that the debt collector is a law firm or otherwise owns the debt, and intends to sue upon the debt—and helps those debt collectors, including Defendant ARS and Defendant EASTPOINT, design their collection practices and collection call scripts in order to convey those deceptive, misleading, and false implications.

120.

Upon information and belief, Defendant DIVERSE FUNDING, Defendant DNF ASSOCIATES, Defendant ARS, and Defendant EASTPOINT are related together in an enterprise designed to hide and obfuscate from consumers the notices required to be provided to consumers about their rights under federal law—including the FDCPA—and otherwise mislead or deceive consumers about their rights, the legal authority of the Defendants to sue consumers, and to generally harass and intimidate

consumers as part of the Defendants' efforts to collect debts from consumers using tactics and methods in violation of the FDCPA.

121.

Upon information and belief, Defendants, through their enterprise, engage in conduct that actively seeks to hide from consumers their rights, the truth, and Defendants' intention and legal authority to act in certain ways, in a pattern of acts intended to shift potential blame amongst the enterprise's various actors.

122.

Upon information and belief, Defendants have engaged in more than two acts intended to further this enterprise through both the United States Mail and through the interstate telecommunications systems—including phones and the internet—as part of the enterprise's efforts to mislead, deceive, or defraud consumers such as Ms. Abernethy through the violation of their rights as consumers.

123.

The consumers targeted by Defendants' enterprise, such as Ms. Abernethy, face harassment, abuse, oppression, deception, fear, and intimidation in ways that are designed to violate the FDCPA while spreading out the risk of those violations across the enterprise's various actors, and

these acts cause consumers such as Ms. Abernethy to suffer injury through emotional distress, loss of time seeking to obtain information about their rights that should have been provided in required disclosures, and costs associated with protecting those rights, including legal fees.

## CAUSES OF ACTION

**Count 1**
*Violations of the Fair Debt Collection Practices Act,*
*15 U.S.C. § 1692 et seq.*

124.

Defendant EASTPOINT communicated with a third party about the Alleged Debt without the consent of Ms. Abernethy.

125.

Defendant EASTPOINT implied it was a law firm in its communications with Ms. Abernethy when it is not a law firm.

126.

Defendant EASTPOINT threatened to take actions that it could not legally take and did not intend to take in an effort to collect the Alleged Debt.

127.

Defendant EASTPOINT failed to provide Ms. Abernethy the notices required by 15 U.S.C. § 1692g.

128.

Defendant EASTPOINT misrepresented the original creditor of the Alleged Debt as PayPal when it was not PayPal, and this caused Ms. Abernethy confusion.

129.

Defendant EASTPOINT misrepresented the owner of the Alleged Debt as Diverse Funding Associates when it was not said entity.

130.

Upon information and belief, Defendant EASTPOINT continued to attempt to collect the Alleged Debt, either directly or indirectly, after receiving Ms. Abernethy's demand for verification and validation and without first responding to said demand.

131.

The actions of Defendant EASTPOINT as described above violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

132.

Defendant ARS made material misrepresentations to Ms. Abernethy about its ownership of the Alleged Debt when it communicated with her during its attempts to collect the Alleged Debt.

133.

Defendant ARS implied it was a law firm and that a lawsuit had already been filed against Ms. Abernethy in its communications with Ms. Abernethy as part of its attempts to collect the Alleged Debt.

134.

Defendant ARS actively misled Ms. Abernethy regarding her rights under the FDCPA to dispute the Alleged Debt and seek verification and validation of the Alleged Debt.

135.

Defendant ARS failed to provide to Ms. Abernethy the disclosures required by the FDCPA, 15 U.S.C. § 1692g.

136.

Defendant ARS communicated with a third party—Ms. Abernethy's mother—about the Alleged Debt and, during that communication, made material misrepresentations about the actions it had or intended to take in its efforts to attempt to collect the Alleged Debt.

137.

Defendant ARS incorrectly identified the alleged original creditor of the Alleged Debt as Pay Pal when it was not Pay Pal, and this caused Ms. Abernethy confusion.

138.

Defendant ARS incorrectly identified the current creditor for the Alleged Debt as DNF Associates LLC.

139.

Defendant ARS used information from Ms. Abernethy's credit report in order to embarrass, demean, insult, harass, intimidate, abuse, and oppress Ms. Abernethy in its attempts to collect the Alleged Debt.

140.

Defendant ARS threatened to take actions it could not legally take and which it never intended to take when it threatened to sue Ms. Abernethy as part of its attempt to collect the Alleged Debt.

141.

Defendant ARS threatened to contact Ms. Abernethy's employer about the Alleged Debt.

142.

Defendant ARS continued to communicate directly with Ms. Abernethy in an attempt to collect the Alleged Debt despite knowing she was represented by counsel.

143.

Defendant ARS continued to attempt to collect the Alleged Debt despite receiving Ms. Abernethy's demand for verification and validation and not having responded to said demand.

144.

The actions of Defendant ARS as described above violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

145.

Upon information and belief, Defendant DNF ASSOCIATES hired Defendant ARS to attempt to collect the Alleged Debt on its behalf.

146.

Upon information and belief, Defendant DNF ASSOCIATES directed Defendant ARS to not send the notices required by 15 U.S.C. § 1692g.

147.

Upon information and belief, Defendant DNF ASSOCIATES directs, oversees, or otherwise reviews the tactics, methods, and means used by

Defendant ARS to attempt to collect debts on its behalf—including the Alleged Debt in this case—including the development and review of any and all call or communication scripts used by Defendant ARS's employees or agents in their collection efforts with consumers, including Ms. Abernethy.

148.

Defendant DNF ASSOCIATES is liable for the actions of its agents—apparent and actual—such as Defendant ARS, under the doctrine of agency/principal liability.

149.

Defendant DNF ASSOCIATES is liable for its own actions in the way it manages, directs, or controls the collection efforts of its agents in their debt collection activities.

150.

The actions of Defendant DNF ASSOCIATES and its agents as described above violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

151.

Upon information and belief, Defendant DIVERSE FUNDING hired Defendant EASTPOINT to attempt to collect the Alleged Debt on its behalf.

152.

Upon information and belief, Defendant DIVERSE FUNDING either directed Defendant EASTPOINT to threaten litigation in Guildford County, North Carolina—the wrong venue for any collection lawsuit—or otherwise knowingly communicated the wrong address to Defendant EASTPOINT for Ms. Abernethy despite knowing, or having reason to know, Ms. Abernethy's proper mailing address and place of residence.

153.

Upon information and belief, Defendant DIVERSE FUNDING hired Defendant ARS to attempt to collect the Alleged Debt from Ms. Abernethy.

154.

Defendant DIVERSE FUNDING is liable for the actions of its agents—apparent and actual—such as Defendant EASTPOINT and Defendant ARS, under the doctrine of agency/principal liability.

155.

Upon information and belief, the officers, directors, and employees of Defendant DIVERSE FUNDING are the officers, directors, employees, or agents of Defendant DNF ASSOCIATES.

156.

Upon information and belief, Defendant DIVERSE FUNDING directs and controls the actions of Defendant DNF ASSOCIATES.

157.

Upon information and belief, Defendant DNF ASSOCIATES is the alter-ego of Defendant DIVERSE FUNDING.

158.

Defendant DIVERSE FUNDING is liable for the actions of Defendant DNF ASSOCIATES through vicarious liability, as a result of Defendant DIVERSE FUNDING's control and direction over the actions of Defendant DNF ASSOCIATES, and as a result of Defendant DNF ASSOCIATES being a wholly-owned subsidiary with no meaningful, separate control of existence from Defendant DIVERSE FUNDING.

159.

The actions of Defendant DIVERSE FUNDING, its agents, and its solely-owner subsidiary as described above violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

160.

Plaintiff incurred actual damages in the form of attorneys' fees and legal costs, in amounts to be shown with more particularity at a later date, as

a direct result of the actions of Defendants as described above that would not have been incurred but for Defendants' actions in violation of the FDCPA, 15 U.S.C. § 1692 *et seq.*

161.

Plaintiff incurred actual damages in the form of stress, anxiety, and emotional distress as a direct result of the actions of Defendants as described above that would not have been incurred but for the actions of Defendants in violation of the FDCPA, 15 U.S.C. § 1692 *et seq.*.

162.

Further, Defendants' violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, make them liable to Plaintiff for not just the actual damages identified above, but also for statutory damages of up to the maximum of $1,000 for each Defendant, plus reasonable court costs and attorneys' fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).

**Count 2**
*Violations by Defendants of Georgia's Fair Business Practices Act*

163.

Defendant EASTPOINT's misrepresentations of who the original creditor was, misrepresentations as to who the current creditor was, implying that it was a law firm when it was not, threats to take actions it could not

legally take and that it had no intention of taking, and communications to third parties about the debt in an effort to harass and intimidate Ms. Abernethy into paying the Alleged Debt are unfair or deceptive acts or practices in the conduct of consumer transactions.

164.

Defendant ARS's misrepresentations of who the original creditor was, misrepresentations as to who the current creditor was, implying a lawsuit had already been filed against Ms. Abernethy, implying that it was a law firm when it was not, threats to take actions it could not legally take and that it had no intention of taking, actively deceptive statements regarding Ms. Aberenthy's rights to dispute and request verification and validation of the Alleged Debt, communications to third parties about the debt in an effort to harass and intimidate Ms. Abernethy into paying the Alleged Debt, and communications with Ms. Abernethy after she retained legal counsel and notified Defendant ARS the same are unfair or deceptive acts or practices in the conduct of consumer transactions.

165.

Defendant DNF ASSOCIATES' actions in seeking collection agencies that engage in aggressive, misleading, and threatening tactics such as implying lawsuits have already been filed or will imminently be filed

when there is no such intention to do so, implying they are law firms or law offices, communicating with third parties and employers to try and oppress, harass, abuse, and intimidate consumers into settling, and misrepresenting a consumer's rights to dispute debts and seek their verification, are unfair or deceptive acts or practices in the conduct of consumer transactions.

166.

Defendant DIVERSE FUNDING's actions in seeking collection agencies that engage in aggressive, misleading, and threatening tactics such as implying lawsuits have already been filed or will imminently be filed when there is no such intention to do so, implying they are law firms or law offices, communicating with third parties and employers to try and oppress, harass, abuse, and intimidate consumers into settling, and misrepresenting a consumer's rights to dispute debts and seek their verification, are unfair or deceptive acts or practices in the conduct of consumer transactions.

167.

Ms. Abernethy relied upon the misrepresentations of each Defendant, as described above, in trying to research and determine the basis of their claims, and those misrepresentations caused Ms. Abernethy confusion, lost time in trying to research the claims, stress, anxiety, and emotional distress.

168.

Each Defendants' actions as described above were done intentionally in order to try and harass, oppress, intimidate, and abuse Plaintiff into paying the Alleged Debt without Plaintiff having the opportunity to make a reasonable investigation into the allegations of debt.

169.

As a result of Defendants' unfair and deceptive acts or practices in the conduct of consumer transactions, Plaintiff suffered stress, anxiety, and emotional distress—otherwise known as garden-variety emotional distress—and incurred legal costs and legal fees to investigate Defendants' allegations in an amount to be shown with more particularity at a later date.

170.

Defendants' unfair and deceptive acts or practices in the conduct of consumer transactions violate Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.* (the "FBPA").

171.

Defendants' violation of the FBPA makes each Defendant liable to Plaintiff for the actual damages detailed above to be shown with more particularity at a later date.  O.C.G.A. § 10-1-399(a).

172.

Defendants' violation of the FBPA makes each Defendant liable to Plaintiff for "reasonable attorneys' fees and expenses of litigation incurred," "irrespective of the amount in controversy." O.C.G.A. § 10-1-399(d).

173.

Defendants' intentional acts in violation of Georgia's FBPA also make each Defendant liable to Plaintiff for treble damages. O.C.G.A. § 10-1-399(c).

### Count 3
*Punitive Damages Against Defendants Under Georgia's FBPA*

174.

Plaintiff has a statutorily created right to "exemplary damages," sometimes also called punitive damages, pursuant to O.C.G.A. § 10-1-399(a) for intentional violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*

175.

Defendants' intentional acts in violation of Georgia's FBPA also make each Defendant liable for "exemplary damages," sometimes also called punitive damages, pursuant to O.C.G.A. § 10-1-399(a), in an amount to be determined by the enlightened conscious of a jury.

## JURY DEMAND

176.

Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff prays that this Court:

(1)     Find Defendants liable for violations of the Fair Debt Collection Practices Act for the reasons stated in the Complaint above;

(2)     Award Plaintiff the full $1,000 statutory damages for each Defendants' FDCPA violations;

(3)     Award Plaintiff actual damages in an amount to be shown with more particularity at a later date, but which includes the court costs and attorneys' fees incurred by Plaintiff in the State Lawsuit;

(4)     Find Defendants liable for actual damages in an amount to be shown with more particularity at a later date for their violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*;

(5)     Find Defendants liable for treble damages for their intentional violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-399(c);

(6)     Find Defendants liable for punitive damages for their intentional violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-399(a);

(7)     Award Plaintiff reasonable attorney's fees and costs in accordance with the FDCPA 15 U.S.C. § 1692k(a)(2)-(3);

(8)     Award Plaintiff reasonable attorney's fees and costs in accordance with the Georgia's FBPA, O.C.G.A. § 10-1-399(d),

for Defendants violations of Georgia's Fair Business Practices Act;

(9)     Award Plaintiff the reasonable costs of this action;

(10)    Award Plaintiff other expenses of litigation;

(11)    Grant Plaintiff such other and additional relief as the Court deems just and equitable.


Respectfully submitted this <u>8 January 2021</u>.

<u>/s/ John William Nelson</u>
John William Nelson
Georgia Bar No. 920108

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph.    404.348.4462
Fax.   404.549.6765


<u>/s/ Daniel E. DeWoskin</u>
Daniel E. DeWoskin
Georgia Bar #220327

DeWoskin Law Firm, LLC
535 N. McDonough Street
Decatur, Georgia 30030
*Phone* (404) 987-0026
*E-mail* dan@atlantatrial.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local R. 7.1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5.1(B).  The foregoing COMPLAINT was prepared on a computer, using Times New Roman 14-point font.

**DATED:**     8 January 2021

/s/ John William Nelson
John William Nelson
State Bar No. 920108

*Attorney for Plaintiff*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph.    404.348.4462
Fax.   404.549.6765